UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:07-cr-1 |
| | ) | Judge Collier/Carter |
| KEVIN J. ROBINSON | ) | |

REPORT AND RECOMMENDATION

I. Introduction

The defendant, Kevin J. Robinson, has moved under the Fourth Amendment to suppress evidence obtained in a search of his vehicle and under the Fifth Amendment to suppress his statements made during the search. (Court File No. 11). This motion is pending before the undersigned having been referred for a report and recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons stated herein, it is RECOMMENDED that defendant's motion to suppress be DENIED.

II. Relevant Facts

An evidentiary hearing was held before the undersigned Magistrate Judge on Friday, March 16, 2007. Cleveland Police Department (CPD) Officer Mike Harris and CPD Officer Walter (Buddy) Mitchell testified. I found them to be credible witnesses and am making the following factual finding based upon their testimony.

*CPD Officer Mike Harris*

Officer Harris works for the Cleveland Police Department as a K-9 officer and patrol officer. He has been with the department for approximately 16 years.

On June 24, 2006, Harris was doing traffic enforcement on 20th Street in Cleveland, Tennessee at an exit ramp from a freeway. He stopped the defendant's vehicle after he went through a stop sign without stopping. Harris approached the driver's side of the vehicle and a second female officer who was with him approached the passenger's side. Harris told the defendant, who was driving the vehicle, that the stop sign violation was the reason for the stop. Harris could smell a strong odor of burnt marijuana coming from the interior. There were two passengers in the vehicle, one in the front passenger seat and another in the back seat. Harris asked for the defendant's driver's license. Defendant Robinson handed him a state identification card; he had no driver's license. Harris asked the defendant if he had been smoking marijuana, and the defendant at first said "no." Harris then asked Robinson to step out and move to the back of the vehicle. Harris then repeated the question of whether he had smoked marijuana, and the defendant admitted that he had earlier. The officer asked if there were any weapons or anything illegal in the vehicle. The defendant answered "no." Harris then asked for consent to search, and Robinson said "yes."

The passengers were asked to exit the vehicle and a search of the interior of the passenger compartment was conducted. Nothing was found. After completing that part of the search, Harris began to issue Robinson a traffic citation for running the stop sign. When Robinson signed the citation, Harris asked for consent to open the trunk of the vehicle. Although Harris could not recall the exact words defendant used to express his assent, he was certain that there was a verbal consent. Harris obtained the keys by reaching into the car window and handed them to the defendant. Robinson then opened the trunk with his keys. Harris saw a blue bag in the back of the trunk. Harris asked Robinson if it was his bag. Robinson said "no." Harris asked

the passengers if the bag belonged to one of them.  They also said "no."  Harris asked Robinson, "what is in the bag?"  Robinson responded that he did not know.  Harris then retrieved the bag and looked down into the drawstring opening where he could see the butt of a handgun.  Also located in the bag were two large cookies of suspected crack cocaine.  Harris asked again, "whose is this?"  Robinson said, "not mine."  Harris replied to the effect that if nobody claimed the bag, they would all be taken into custody.  At this point, Robinson said the bag was not his but he would "take responsibility" for it.   Harris then handcuffed Robinson and placed him in Officer Mitchell's patrol car for illegal possession of guns and drugs.

*CPD Officer Walter (Buddy) Mitchell*

Officer Mitchell testified he had been with the Cleveland Police Department for 16 years and served as a master officer on patrol.  He was not present for the initial stop but arrived shortly after the driver was taken out of the car, after the original consent.  Mitchell was present for the consent to search the trunk.  Mitchell observed Harris writing out the citation.  He overheard Harris ask for permission to search and verified that Robinson responded affirmatively.  He could not remember the exact words.  Mitchell saw Harris get the keys from inside the vehicle and give them to the defendant.  He watched the defendant open the trunk.  I conclude from the testimony of Mitchell that the conversation between the defendant and the police officers was not threatening in any way.

### III. Law and Argument

*A. Evidence Obtained During the Search*

It is well settled that when police have conducted a warrantless search, the government bears the burden of proof to show the search was justified under the Fourth Amendment.  *United*

*States v. Haynes*, 301 F.3d 669, 676 (6th Cir. 2002).  The police may lawfully detain a vehicle where there is probable cause to believe a traffic violation has occurred.  *United States v. Freeman*, 209 F.3d 464, 465 (6th Cir. 2000); *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999), *cert. denied*, 528 U.S. 1176 (2000); *United States v. Bradshaw*, 102 F.3d 204, 210 (6th Cir. 1996).  Because it is a violation of Tennessee state law to run a stop sign, the traffic stop, initially, was justified.

Office Harris testified that when he approached the defendant's vehicle, he smelled the strong odor of burnt marijuana emanating from the vehicle.  It is firmly established in the Sixth Circuit that a marijuana odor emanating from a vehicle supplies probable cause to law enforcement officers to search the entire vehicle – even the trunk –  and any containers within that vehicle which could be hiding marijuana.  *United States v. Garza*, 10 F.3d 1241, 1246 (6th Cir. 1993) ("we find that Agent Perman's smelling the marijuana [in the truck] then constituted probable cause to believe there was marijuana in the vehicle"); *United States v. $118,170.00 in U.S. Currency*, 69 Fed. Appx. 714, 716 (6th Cir. Jul. 9, 2003) (unpublished) ("The smell of marijuana alone constitutes probable cause to believe that drugs are in the vehicle and will justify searching without a warrant."); *United States v. Jackson*, 63 Fed. Appx. 839, 842 (6th Cir. Apr. 25, 2003) (unpublished) ("We conclude that during a reasonable stop of the car, the two police officers smelled marijuana coming from the car's interior, and that this discovery provided probable cause to search the automobile."); *cert. denied*, 540 U.S. 910 and 540 U.S. 916 (2003); *United States v. Littleton*, 15 Fed.Appx. 189, 193 (6th Cir. Jun. 4, 2001) (unpublished) ("As a matter of law, the district court correctly concluded that the odor of marijuana can constitute probable cause for a warrantless search [of a vehicle]"); *United States v. Atkins*, 1999 WL

4

1045942 **2 (6th Cir. Nov. 8, 1999) (strong smell of marijuana coming from car after valid stop for speeding gave officers probable cause to search vehicle for marijuana); *United States v. Gonzalez*, 69 F.3d 538, *3 (6th Cir. Oct. 24, 1995) (Table) ("Once Officer Kellerhall smelled the odor of marijuana coming from the motor home, he had probable cause to search that vehicle."); *United States v. Carrera*, 1992 WL 116006 **2 (6th Cir. May 29, 1992) ("The smell of marijuana emanating from [the] vehicle gave the officer probable cause to search the vehicle, including the trunk."). *See also, United States v. Burns,* 298 F.3d 523, 542 (6th Cir. 2002) ("An officer may conduct a warrantless search of every part of a legitimately stopped vehicle, including the trunk and all containers, if there is probable cause to believe that the vehicle contains contraband."), *cert. denied,* 538 U.S. 953 (2003); *United States v. Crotinger*, 928 F.2d 203, 205 (6th Cir. 1991) (holding that where officers had probable cause to believe vehicle contained contraband, officers could search entire vehicle, including trunk, and any containers therein which could conceal the contraband); *United States v. Borne*, 2005 WL 2290273, *13 (E.D. Tenn. Sept. 20, 2005) (same).

      Plaintiff argues that it makes a significant difference in the probable cause analysis whether the officers smelled burnt or raw marijuana in the vehicle. According to the defendant, the odor of burnt marijuana is insufficient to support probable cause to search the vehicle because burnt marijuana means the marijuana has been smoked and, accordingly, the officers have no reasonable basis to believe there might be more in the vehicle. I must disagree. I find marijuana that has been smoked in the car so recently as to cause a strong odor to emanate from the car provides a sufficient basis to conclude there is a fair probability that more contraband will be found in the vehicle. *See United States v Couch*, 367 F.3d 557, 560 (6th Cir. 2004) (probable

cause exists when there is a "fair probability" that fruits of a criminal activity will be located within the premises to be searched.) The Sixth Circuit has also directly addressed this issue and held, raw or burnt, the odor of marijuana coming from a vehicle supplies probable cause to search that vehicle:

> As regards the different descriptions of the smell of the marijuana, this conflict stems from comparing testimony provided by [Officer] Baker at the suppression hearing with testimony given by [Officer] Higgins at the trial. At the suppression hearing [Officer] Higgins testified to smelling marijuana, without specifying whether it was fresh or burnt. Even if we were to consider the trial testimony, we do not see any significant conflict that would alter the outcome, for in any event, marijuana was detected as emanating from Foster's car and was ultimately discovered in it. Whether it was burnt or fresh-smelling marijuana does not change this.

*United States v. Foster,* 376 F.3d 577, 583 -584 (6th Cir.), *cert. denied*, 543 U.S. 1012 (2004).

Based on overwhelming Sixth Circuit precedent, both controlling and persuasive, I conclude that once Harris detected the strong odor of burnt marijuana coming from the defendant's vehicle, he had probable cause to conduct a warrantless search of the vehicle, including the trunk, and any containers therein which could conceal marijuana. Accordingly, it is RECOMMENDED that defendant's motion to suppress all evidence found in the vehicle on June 24, 2006, be DENIED.

*B. Defendant's Statements Made During the Stop*

Pursuant to the Fifth Amendment's privilege against self-incrimination, police must give a suspect in police custody the standard Miranda warnings[1] before questioning or the defendant's

---

[1] These warnings are: "a suspect 'has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.'" *Dickerson*, 530 U.S. at 435 (citing *Miranda*, 384 U.S. at 479).

statements are not admissible at trial in the prosecution's case in chief. *Dickerson v. United States*, 530 U.S. 428 (2000); *Miranda v. Arizona*, 384 U.S. 436 (1966). The test for determining when a detention has occurred for purposes of the Fourth Amendment and when a custodial detention has occurred for purposes of the Fifth Amendment are not the same. *Berkemer v. McCarty*, 468 U.S. 420, 436-441 (1984); *United States v. Salvo*, 133 F.3d 943, 949 (6th Cir. 1998); *United States v. Knox*, 839 F.2d 285, 289-291 (6th Cir. 1988). The test for determining whether a seizure has occurred under the Fourth Amendment is whether a reasonable person in the defendant's position would have felt free to leave, given the totality of the circumstances. For Fifth Amendment purposes, however, "the ultimate inquiry is simply whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Stansbury v. California*, 511 U.S. 318, 322 (1994) (per curiam); *see also Miranda v. Arizona*, 384 U.S. 436, 444 (1966) (custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."); *United States v. Crossley*, 224 F.3d 847, 861 (6th Cir. 2000) (same). Thus, it is possible for a person to be detained but not in custody for purposes of requiring Miranda rights. *Berkemer*, 468 U.S. at 427.

No formal arrest or restraint on freedom of movement of the degree associated with a formal arrest occurred until Harris placed the defendant in handcuffs and led him to Mitchell's patrol car. All defendant's statements concerning the blue bag were made before defendant was handcuffed and placed under arrest. Thus, *Miranda* warnings were not required at the time Harris asked the defendant about the blue bag, and, accordingly, all defendant's statements concerning the bag made during the stop before defendant was handcuffed need not be

suppressed.

## IV. Conclusion

For the reasons stated herein, it is RECOMMENDED that the defendant's motion to suppress evidence found in the trunk of the vehicle he was driving on June 24, 2006 and to suppress all statements he made to the officers during the June 24, 2006 traffic stop before he was handcuffed be DENIED.[2]

SO ORDERED.

ENTER:

                                                   s/William B. Mitchell Carter
                                                   UNITED STATES MAGISTRATE JUDGE

---

[2] Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).