UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

|                          |   |                                |
|--------------------------|---|--------------------------------|
| UNITED STATES OF AMERICA | ) |                                |
|                          | ) |                                |
|                          | ) | No. 1:07-CR-1                  |
| v.                       | ) |                                |
|                          | ) | Chief Judge Curtis L. Collier  |
|                          | ) |                                |
| KEVIN J. ROBINSON        | ) |                                |

**M E M O R A N D U M**

Defendant Kevin J. Robinson ("Defendant") filed a motion to suppress (Court File No. 11), which was referred to United States Magistrate Judge William B. Carter ("magistrate judge") to conduct an evidentiary hearing if necessary and make a report and recommendation pursuant to 28 U.S.C. § 636(b)(1). The magistrate judge held an evidentiary hearing on March 16, 2007 and filed a report and recommendation ("R&R") recommending Defendant's motion be denied on May 2, 2007 (Court File No. 21).

Defendant filed objections to the R&R within the required ten days, arguing the magistrate judge erred in making certain conclusions of law and factual findings (Court File No. 22). As a result, Defendant argues the Court should sustain Defendant's objections, overrule the magistrate judge's decisions, and suppress the items discovered in the June 24, 2006 traffic stop and search of the vehicle as well as certain incriminating statements Defendant made during such stop (*id.*). After carefully reviewing the record, including the relevant portions of the transcript of the evidentiary hearing held before the magistrate judge, and after considering both the filings of Defendant and the United States ("Government") (Court File Nos. 22 & 23), the Court finds the magistrate judge's factual findings to be supported by the weight of the evidence and his legal analysis to be correct

under the relevant law. Therefore, with the addition of an alternative basis for denial of Defendant's motion, the Court will **ACCEPT** and **ADOPT** the magistrate judge's R&R and will **DENY** Defendant's motion to suppress (Court File No. 11).

## I. STANDARD OF REVIEW

This Court must conduct a *de novo* review of those portions of the R&R to which objection is made and may accept, reject, or modify, in whole or in part, the magistrate judge's findings or recommendations. 28 U.S.C. § 636(b)(1)(C). When reviewing a magistrate judge's credibility determinations on a motion to suppress, the district court may accept or reject the magistrate judge's determinations, while recognizing a magistrate judge is in the better position to assess the credibility of witnesses he sees and hears. *United States v. Ailemen*, 986 F. Supp. 1228, 1231 (N.D. Cal. 1997) (citing *United States v. Raddatz*, 447 U.S. 667, 673-76 (1980)). Credibility determinations of the magistrate judge who personally listened to the testimony of a witness should be accepted by a district judge unless in his *de novo* review of the record he finds a reason to question the magistrate judge's assessment. *Blizzard v. Quillen*, 579 F. Supp. 1446, 1449 (D. Del. 1984); *see also United States v. Wallace*, No. 1:04-CR-96, 2005 WL 2922226, *9 (E.D. Tenn. Nov. 3, 2005).

## II. FACTS

Defendant objects to one of the magistrate judge's factual findings; however, after reviewing the record *de novo* the Court finds the magistrate judge's factual findings are consistent with the record. Consequently, the Court will **ACCEPT** and **ADOPT** by reference the magistrate judge's statement of the relevant facts in his R&R (Court File No. 21, p. 1-3).

## III. ANALYSIS

At the evidentiary hearing, the Government offered the testimony of Officer Mike Harris

("Officer Harris") and Officer Walter Mitchell ("Officer Mitchell") of the Cleveland Police Department. The Defendant presented no witnesses. The magistrate judge found both of these witnesses to be credible and made his factual finding based upon their testimony. Defendant objects to: (1) the magistrate judge's conclusion of law there was probable cause to search all areas of the vehicle including the trunk, and (2) the magistrate judge's factual finding that Defendant was not in custody prior to making certain incriminating statements.[1]

**A.    Defendant's Objection to the Magistrate Judge's Legal Conclusion that Probable Cause Existed to Search All Areas of the Vehicle, Including the Trunk**

On June 24, 2006 Defendant was stopped by Officer Harris who observed Defendant run through a stop sign without stopping (Court File No. 21). The magistrate judge found this initial traffic stop was justified since there was probable cause to believe a traffic violation had occurred. The magistrate judge also found that since Officer Harris smelled the strong odor of burnt marijuana coming from the stopped vehicle, probable cause exited to search the entire vehicle, even the trunk and any containers in the trunk. The magistrate judge cited several Sixth Circuit cases to support his findings.[2] In his first objection Defendant argues the cases cited in the R&R regarding this issue are factually distinguishable from his case and the Court should consider his motion to suppress with

---

[1] It appears Defendant also attempts to renew all his previous positions and arguments not specifically discussed in his written objections by stating, "[t]o the extent other issues presented by Mr. Robinson both in his pleadings and argument to the court were not addressed, Mr. Robinson renews his positions and stands by those arguments" (Court File No. 22). However, the Court will only consider and address the specific written objections Defendant filed. *See Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (indicating the court need not provide *de novo* review where objections to a report and recommendation are frivolous, conclusive, or general).

[2] The magistrate judge also found Defendant's argument - there was no probable cause to search the vehicle since law enforcement smelled burnt, as opposed to fresh, marijuana emanating from the vehicle - was without merit.

3

a "strong eye" on the facts (Court File No. 22).

First and foremost, the Court finds Officer Harris legally stopped Defendant's vehicle since he ran a stop sign, which is a violation of state law. *See United States v. Townsend*, 305 F.3d 537, 541 (6th Cir. 2002) ("a police officer may effect a traffic stop of any motorist for any traffic infraction"). "Under the automobile exception, a warrantless search of a vehicle which has been lawfully stopped is permissible if the search is based upon probable cause." *United States v. Littleton*, 15 F. App'x 189, 191 (6th Cir. 2001). It is well established that if probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of that vehicle, including the trunk and any containers found within it. *United States v. Ross,* 456 U.S. 798, 825 (1982); *United States v. Crotinger*, 928 F.2d 203, 205 (6th Cir. 1991). Under these circumstances, any container in the vehicle, regardless of ownership or location, is subject to a search. *See Wyoming v. Houghton*, 526 U.S. 295, 307 (1999) (indicating any container found in a vehicle may be searched because "it may contain the contraband that the officer has reason to believe is in the car").

Probable cause to search a vehicle is established if, under the "totality of the circumstances" there is a "fair probability" that the car contains contraband or evidence. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). There is abundant Sixth Circuit precedent holding officers smelling burnt marijuana emanating from a stopped vehicle have sufficient probable cause to search the entire vehicle without a warrant. *See United States v. Reeves*, No. 1:06:CR:291, 2007 WL 1238885, *2 (W.D. Mich. Apr. 27, 2007) (citing *United States v. $188,170.00 in U.S. Currency*, 69 F. App'x 714, 716 (6th Cir. 2003) ("The smell of marijuana *alone* constitutes probable cause to believe that drugs are in the vehicle and will justify searching without a warrant.") (emphasis added); *United States v. Garza*, 10 F.3d 1241, 1246 (6th Cir. 1993) ("smelling the marijuana . . . constituted probable

cause to believe that there was marijuana in the vehicle"); *United States v. Jackson*, 63 F. App'x 839, 842 (6th Cir. 2003) (finding the smell of burned marijuana coming from inside a vehicle during a reasonable stop provided probable cause to search the vehicle); *cert. denied*, 540 U.S. 910 and 540 U.S. 916 (2003)); *see also Crotinger*, 928 F.2d at 205 (finding a warrantless search justified when an officer detected the faint smell of burning marijuana come from a vehicle validly stopped for speeding); *Littleton*, 15 F. App'x at 193 (indicating the Sixth Circuit has "clearly held that an officer's smelling the marijuana during a vehicle stop constitute[s] probable cause" for a warrantless search). Defendant admitted to Officer Harris he smoked marijuana earlier and there was a strong odor of marijuana emanating from his vehicle; therefore, based upon the totality of the circumstances, there was a fair probability contraband was in the vehicle.[3]

Accordingly, the magistrate judge's legal conclusion that probable cause existed was not erroneous. While the facts of some of the cases cited in the R&R may not be directly on point with the instant case, the magistrate judge's conclusion is supported by authoritative Sixth Circuit precedent. The magistrate judge specifically cites *United States v. Carrrera*, No.90-6415, 90-6564, 1992 WL 116006 (6th Cir. May 29, 1992), which held "the smell of marijuana emanating from [the] vehicle gave the officer probable cause to . . . search the vehicle, including the trunk." *Carrrera*, 1992 WL 116006 at *2. Defendant argues it is significant that the marijuana in *Carrera* was raw or fresh as opposed to burnt since that court cited a law review article as support for its holding

---

[3] When asked how strong the odor of marijuana was coming from Defendant's vehicle during the traffic stop, Officer Harris testified, "it was very fresh, strong odor, just like a strong odor of a cigarette – marijuana cigarette just been smoking" (Transcript of March 16, 2007 Suppression Hearing at 5). Officer Harris also testified "the odor was very fresh in the car, as if it had been recently smoked" (*id*. at 17).

5

which listed cases holding the odor of fresh marijuana, standing alone, provides probable cause for a warrantless search. *Id*. However, the court did not discuss whether the difference between burnt versus fresh-smelling marijuana would have any effect at all on its probable cause analysis.[4]

Additionally, as the magistrate judge pointed out, the Sixth Circuit has explicitly indicated there is no difference between burnt and fresh-smelling marijuana in a probable cause analysis. *See United States v. Foster*, 376 F.3d 577 (6th Cir. 2004). In *Foster* the Sixth Circuit determined when officers detected the smell of marijuana coming from the defendant's vehicle, probable cause was established to search it without a warrant. *Id*. at 588. The officers' testimony regarding whether they smelled fresh or burnt marijuana was conflicting. *Id*. at 583-84. At the suppression hearing in *Foster*, one of the officers testified he smelled burnt marijuana and at the trial, another officer testified he smelled fresh marijuana coming from defendant's vehicle. *Id*. at 582 n.4. The Sixth Circuit noted this inconsistency was not significant and would not alter the ultimate outcome of its probable cause analysis. *Id*. at 584 (finding the odor of marijuana emanating from a vehicle provided officers with probable cause to search a vehicle, regardless of "whether it was burnt or fresh-smelling marijuana").

Defendant relies on a Tenth Circuit case for the proposition that an officer's alleged smell of burnt marijuana did not give probable cause to search the trunk of a vehicle, when there was no corroborating evidence defendant had recently smoked marijuana and none was found in the

---

[4] Defendant also empathizes that several of the cases cited in support of the finding of probable cause involve vehicles without an actual trunk, such as vans or sport utility vehicles. However, the vehicle in *Carrera* had a trunk similar to the one in Defendant's car. In that case, the Sixth Circuit applied the holding from *Ross* and found the probable cause established by the smelling of illegal drugs extended to all areas of the vehicle, including the trunk and any containers there. *Carrera,* 1992 WL 116006 at *2.

passenger compartment of the vehicle. *United States v. Nielsen*, 9 F.3d 1487, 1491 (10th Cir. 1993). As fully explained, there is Sixth Circuit precedent on point which is authoritative and controlling; therefore, the Court does not deem it necessary, nor permissible, to rely on persuasive case law from other circuits. Regardless, *Nielsen* is distinguishable from the instant case. In *Nielsen*, there was no corroboration that defendant recently smoked marijuana and defendant refused to consent to a search of his trunk. *Id*. at 1488-89. In this case, there is corroboration, in addition to the smell coming from the vehicle, because Defendant admitted to Officer Harris that he had smoked marijuana earlier. Defendant also consented to a search of the trunk in this case.

Accordingly, for the foregoing reasons, the Court finds Defendant's first objection is without merit and accepts and adopts the magistrate judge's legal conclusion that probable cause existed to search Defendant's entire vehicle, including the trunk and all containers therein.

**B.    Defendant's Consent to Search the Vehicle**

As the Government points out, the magistrate judge performed a probable cause analysis without commenting or relying upon Defendant's consent to search (Court File No. 23). While the Court accepts and adopts the magistrate judge's legal conclusion (probable cause existed to search Defendant's entire vehicle), the Court finds Defendant's consent to search both the vehicle in general as well as the trunk in particular provides another valid basis for the warrantless search.

A warrantless search is valid if *either* probable cause or consent exists. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). A consent search is a well established exception to the warrant requirement. *Id*. For consent to be valid, the Government must show by a preponderance of the evidence that the consent was voluntary and knowing considering the totality of the circumstances. *Id*. at 248; *United States v. Erwin*, 155 F.3d 818, 823 (6th Cir. 1998) (to be voluntary

7

consent "must be unequivocal, specific, . . . intelligently given, [and] uncontaminated by any duress or coercion").

Initially, Defendant gave consent to search the vehicle without limiting the scope of his consent to any particular portion of the vehicle (Court File No. 21).[5] Defendant never retracted his consent (*id*.). After searching the interior of the vehicle and finding nothing, Officer Harris subsequently requested specific permission to search the trunk (*id*.). Although they did not recall the exact words Defendant used, both officers testified Defendant responded affirmatively to the request to search the trunk without limiting the scope of his consent (*id*.). Officer Harris removed the keys from the vehicle's ignition and handed them to Defendant, who then opened the trunk (*id*.).

Defendant does not dispute the fact he gave consent to search twice. The magistrate judge made a credibility judgment and concluded from the testimony of Officer Mitchell that the conversation between Defendant and the officers was not threatening in any way. The Court accepts this conclusion and finds the officers did not threaten or coerce Defendant into consenting. Additionally, there is some indication Defendant has had experience in the criminal justice system. Under the totality of the circumstances, the Court concludes Defendant's consent was voluntary, knowing, and intelligently given in both instances. Accordingly, regardless of the probable cause determination, the Court finds Defendant's consent serves as an alternative basis to deny his motion to suppress.

---

[5] Defendant does not dispute he had the authority to consent to a search of the vehicle. However, the Court notes that as the driver of the vehicle, Defendant had authority to consent to a search of it. *See United States v. Matlock*, 415 U.S. 164, 171 (1974).

**C. Defendant's Objection to the Magistrate Judge's Finding Defendant's Statements Should Not be Suppressed**

The magistrate judge found Defendant was detained but not in custody for purposes of requiring *Miranda* rights until Officer Harris placed handcuffs on Defendant and led him to the patrol car. The magistrate judge also found all of Defendant's statements concerning taking responsibility for the bag which contained the drugs and gun were made before Defendant was handcuffed and placed under arrest. Defendant specifically objects to these findings based upon his recollection of Officer Harris' testimony at the suppression hearing. Defendant believes Officer Harris testified he took Defendant into custody by handcuffing him as soon as he saw the butt of the gun in the bag. Afterwards, Officer Harris stated if no one took responsibility for the gun and bag, all would be charged. At that time Defendant admits he took responsibility for the bag and its contents; however, he argues his statements should be suppressed since he was not given *Miranda* rights prior to making them.

At the suppression hearing, after Officer Harris described the circumstances of Defendant's consent to search the trunk of the vehicle, he testified:

> A. At that point he used the keys to open up the trunk. And I was standing at the left side of the trunk. And when he – once he turned the key, I asked him to step back, just for officer safety, because I wasn't sure if there was somebody in the trunk or what it may be, for officer safety. So I eased the trunk with, I believe, my left hand, and at that point don't see anything up at the front or deeper in the trunk. It was pretty well clear, like a spare tire, but there was a blue bag sitting close to the edge at the back of the trunk. And at that point I stepped closer to him, and Mr. Robinson had come up to me, and I said, "Is this your bag?" I asked Mr. Robinson if this was his bag. And he said – I believe he said no. And I said, "Are these the passengers' bags here?" And I believe they denied, also, no, at that time. I said, "What is in the bag?" And he stated, "I don't know." I am trying to remember exactly the verbatim. But at that point I cracked open the bag area right there. And from a visual point, without opening the bag totally up, I could see the butt of a weapon, a pistol, handgun.

9

Q. What did you do after you saw that?

A. And I continued to ask him – At this time he was not under any type of detention or anything; he was free to move or anything. I asked him whose this was. And he said, "It's not mine." And I said, "Well, at that point, everybody's going to have to be under custody – in custody here in a moment."

Q. Did you ask the other two at that point whether the bag or things in the bag belonged to them?

A. I believe it was asked. And I believe maybe one of the other officer had relayed that, also, to them. And they were denying at that time, also.

Q. Okay. You indicated that, you know, you were going to have to take everybody to jail at that point?

A. Yes.

Q. All right.

A. And at that moment Mr. Robinson stated that it was his, he would take responsibility for it.

Q. Okay. What happened next?

A. At that point nothing else was said to him, I placed him in custody and put him in the back of Officer's Mitchell's patrol car.

(Transcript of March 16, 2007 Suppression Hearing at 9-11).

. . .

A. I believe there was nothing else said to him once he made the statement, "I'll take responsibility." And he was placed in handcuffs and put in the patrol car, Officer Mitchell's patrol car.

(Transcript of March 16, 2007 Suppression Hearing at 26).

. . .

Q. And then you saw the gun and you said what, after you saw the gun?

A. I said, "Well, if nobody's claiming responsibility, then I guess everybody's going to be taken to jail."

10

Q. Okay. Were you speaking to anyone specifically when you made that statement?

A. Just all three that were there, that could hear me.

Q. Okay. At that point had you placed the defendant under arrest yet?

A. No, I hadn't.

Q. He was not in handcuffs?

A. No, he was not.

(Transcript of March 16, 2007 Suppression Hearing at 30-31).

. . .

Q. All right. Now, as far as when you actually took him into custody, you actually placed the cuffs on him after you found the gun and he had accepted some – some type of ownership over it?

A. Yes.

(Transcript of March 16, 2007 Suppression Hearing at 33).

A suspect who is in custody and subject to interrogation must be given *Miranda* warnings against self incrimination. *See Miranda v. Arizona*, 384 U.S. 436, 467-68 (1966). In determining whether a person is "in custody" for purposes of *Miranda*, "a court must examine all of the circumstances surrounding the interrogation, but the ultimate inquiry is simply whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Stansbury v. California*, 511 U.S. 318, 322 (1994) (internal citations and quotation marks omitted). It is possible for a person to be detained during an ordinary traffic stop, but not in custody for purposes of requiring *Miranda* rights. *Berkemer v. McCarty*, 468 U.S. 420, 436-41 (1984).[6]

---

[6] There is also a "public safety exception" to the *Miranda* holding which allows officers to question a suspect at the scene of an arrest about weapons, drug use, and other matters relating to the safety of officers or the general public without first administering *Miranda* warnings. *See New*

Since there is no reason to question the magistrate judge's assessment of Officer Harris' testimony, the Court defers to the magistrate judge's finding that the testimony was credible . Based upon that testimony, it is clear Officer Harris handcuffed Defendant and placed him into the patrol car after Defendant made the incriminating statements claiming responsibility for the bag and its contents. The Court finds no formal arrest or restraint on freedom of movement of the degree associated with a formal arrest occurred until Officer Harris handcuffed Defendant and placed him in the car. Thus, *Miranda* was not yet applicable when Defendant made the incriminating statements and they should not be suppressed.

Accordingly, after reviewing the evidence presented at the suppression hearing and the applicable law, the Court finds the magistrate judge's recommendation as to Defendant's statements is supported by both the evidence and the law and Defendant's second objection is without merit.

## IV. CONCLUSION

For the foregoing reasons, the Court will **ACCEPT** and **ADOPT** the magistrate judge's R&R, with the addition of an alternative basis for denial of Defendant's motion (his consent to search), and will **DENY** Defendant's motion to suppress (Court File No. 11).

An Order shall enter.

**/s/**

---

*York v. Quarles*, 467 U.S. 649, 655-56 (1984).

/s/
**CURTIS L. COLLIER
CHIEF UNITED STATES DISTRICT JUDGE**